**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIE A. FORESTER; LARRY E.
DAVENPORT; ALFREDO CHAVEZ;
CARLOS M. TERAN; and DONALD E.
EVANS, SR.,
          *Plaintiffs-Appellants,*

          v.

MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security,
          *Defendant-Appellee.*

No. 05-16517

D.C. No.
CV-01-00253-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Submitted April 17, 2007*
San Francisco, California**

Filed August 29, 2007

Before: Dorothy W. Nelson, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Bea

*Michael Chertoff is substituted for his predecessor, Tom Ridge, as
Secretary for the Department of Homeland Security. Fed. R. App. P.
43(c)(2).

**This panel previously granted appellants' motion to submit this
appeal on the briefs. Fed. R. App. P. 34(a)(2).

10809

## COUNSEL

Paul Randall Bays, Bays Smith Law, P.C., Litchfield Park, Arizona, for the appellants.

Paul K. Charlton, United States Attorney, Christina M. Cabanillas, Appellate Chief, Richard E. Gordon, Assistant U.S. Attorney, and Janet K. Martin, Assistant U.S. Attorney, Tucson, Arizona, for the appellee.

## OPINION

CALLAHAN, Circuit Judge:

Appellants Alfredo Chavez ("Chavez"), Carlos M. Teran

("Teran"), and Donald E. Evans, Sr., ("Evans") (collectively "Plaintiffs"), alleged under Title VII, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634, that their employer, the United States Border Patrol, failed to promote them due to their age.[1] The district court granted the defendant's motion for summary judgment, concluding that it lacked subject matter jurisdiction because Plaintiffs did not wait 30 days after filing a notice of intent to sue with the Equal Employment Opportunity Commission ("EEOC") before filing suit. The district court also declined to provide equitable relief from the timing requirement. Plaintiffs appeal, alleging that the district court had jurisdiction and erred in not granting equitable relief. We vacate the district court's order granting summary judgment and remand.[2]

## I.

Plaintiffs brought a lawsuit against the defendant seeking relief under Title VII and the ADEA for alleged employment discrimination and retaliation. Plaintiffs allege that discriminatory acts began after Border Patrol Agent Rowdy Adams ("Adams") was assigned as Patrol Agent in Charge to the Douglas Border Patrol station where Plaintiffs worked. Plaintiffs claim that Adams intended to eliminate the older workers from the Douglas Border Patrol station. Specifically, Chavez alleges that he applied for a promotion, but Adams selected younger and less experienced employees simply because of age. Teran alleges that he was removed from a position over-

---

[1]The lawsuit and appeal originally included plaintiffs Willie A. Forester and Larry E. Davenport. Each was dismissed by stipulation on June 6, 2006.

[2]The Government alleges that it maintained in the district court that the court lacked jurisdiction over any ADEA based retaliation claim because the Government had not waived its sovereign immunity for such claims. Because the district court has not addressed this assertion, and it is not critical to our disposition of this appeal, we leave it to the district court to consider the claim on remand should the government continue to assert it.

seeing construction of a border fence and replaced with a younger agent on account of his age. Evans also claims that he was discriminated against because of his age. Plaintiffs maintain that each would have been promoted but for his age.

Plaintiffs participated in counseling with the EEOC and received letters ("Rights Memoranda") in late February 2001, advising them of their "rights in pursuing an EEOC complaint." On the third page of each letter, the EEOC describes the process necessary for filing an age discrimination claim, including the following:

> [Y]ou may elect to bypass the administrative procedure and file a civil action directly in an appropriate U.S. District Court, after first filing a written notice of intent to file a civil action with the EEOC within 180 calendar days of the date of the alleged discriminatory action. Once a timely notice of intent to sue is filed with the EEOC, you must wait at least 30 calendar days before filing a civil action.

Between March and May 2001, Plaintiffs each received counseling reports from the EEOC and Notices of the Right to File a Formal Complaint ("Complaint Letter").

On May 23, 2001, Plaintiffs each sent a notice of intent to sue to the EEOC. Nine days later, on June 1, 2001, Plaintiffs filed a complaint in the United States District Court for the District of Arizona. On July 5, 2001, the EEOC sent letters to the appropriate staff director at the employing agency, informing the director of the Plaintiffs' notices of intent to sue and requesting a complete inquiry within 30 days. There is no indication that any further administrative action was taken.

Plaintiffs filed amended complaints on October 16, 2001, and on January 17, 2002. After discovery, the defendant filed a motion for summary judgment on January 13, 2004, alleging that Plaintiffs failed to comply with the ADEA's 30-day

notice of intent to sue requirement. Plaintiffs voluntarily dismissed each of their claims except those under the ADEA and for retaliation under Title VII.

In May 2005, the district court granted the motion for summary judgment, concluding that it lacked jurisdiction over Plaintiffs' ADEA claims because the complaint was filed prematurely. It also denied Plaintiffs equitable relief. The court reasoned that because Plaintiffs had been informed of the 30-day notice of intent to sue requirement by the Rights Memoranda and were represented by an attorney at the time the complaint was filed, equitable relief was not available under the Ninth Circuit's decision in *Hageman v. Phillips Roxane Laboratories, Inc.*, 623 F.2d 1381 (9th Cir. 1980) (denying equitable relief where plaintiff, represented by counsel, waited a substantial period of time before filing his complaint).

## II.

A district court's grant of summary judgment is reviewed de novo. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). Viewing the evidence in the light most favorable to the non-moving party, we must decide whether any genuine issues of material fact exist and whether the district court correctly applied relevant substantive law. *Johnson v. Henderson*, 314 F.3d 409, 413 (9th Cir. 2002).

## III.

Plaintiffs assert that had they filed their complaint 30 days after filing notice of intent to sue, they would have forfeited judicial review of some of their discrimination allegations because they believed they were required to file their civil action within 180 days of the alleged discriminatory conduct. Plaintiffs are incorrect.

A *private* or *state* (collectively "private") employee who believes he has been discriminated against on the basis of age

must file a complaint with the EEOC within 180 days of the alleged discrimination, or 300 days in a deferral state. 29 U.S.C. § 626(d) (2000). The employee may not file a civil action in district court until 60 days after filing the charge with the EEOC. *Id.*

**[1]** By contrast, a *federal employee* who believes he has been discriminated against because of age has two options under 29 U.S.C. § 633a (2000). First, he may file an administrative action directly with the EEOC. 29 C.F.R. § 1614.105. After exhausting the administrative remedies by waiting 180 days after filing an administrative action with the EEOC, or upon receiving a final agency determination, the employee may file a civil action in district court. *Id.* at § 1614.201(c). Second, a federal employee may bypass administrative proceedings and file directly in district court ("bypass provision"). 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a). To do so, the employee is required to file a notice of intent to file a civil action with the EEOC within 180 days from the alleged discriminatory conduct, and then wait 30 days before filing the civil action.[3] Plaintiffs are federal employees and filed their complaint under the bypass provision.

**[2]** Contrary to Plaintiffs' fears, the Supreme Court's opinion in *Stevens v. Department of Treasury*, 500 U.S. 1, 7 (1991), establishes that their claims would not have been barred had they waited 30 or more days after filing their

---

[3]29 U.S.C. § 633a(d) states:

When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

notices of intent to sue before filing their lawsuit. In *Stevens*, the district court dismissed Stevens' civil action brought under the ADEA because Stevens, a federal employee, did not "notify the EEOC *within* thirty days prior to commencing suit." *Id.* at 6. The Supreme Court vacated the dismissal. It noted that Stevens had filed his notice of intent to sue 176 days after the alleged discriminatory action, but he did not file his lawsuit until more than 30 days after giving notice. *Id.* at 6-7. The Supreme Court held that, according to the plain language of § 633a, Stevens satisfied the bypass provision by giving notice of intent to sue *within* 180 days from the date of the alleged discriminatory conduct and filing his civil action *more than* 30 days after he gave notice of intent to sue. *Id.* at 7. The Supreme Court recognized that some limitations period for filing a complaint was necessary, and held that because § 633a contained no limitations period, a limitations period should be borrowed from an analogous federal or state statute. *Id.* The Court, however, declined to adopt a particular limitations period because Stevens filed his suit "only one year and six days after the allegedly discriminatory event," which respondents acknowledged was "well within whatever statute of limitations might apply to the action." *Id.* at 8 (quotation marks and citations omitted).

**[3]** After *Stevens*, it is clear that Plaintiffs were not required to file their civil action in the district court within 180 days of the alleged discriminatory conduct. Indeed, following *Stevens*, the district court would have retained jurisdiction if Plaintiffs had waited considerably more than 30 days after filing their notice of intent to sue before filing their lawsuit, and waiting would not have limited the scope of the district court's review.

## IV.

**[4]** In another case, the Supreme Court addressed a provision that required charges of discrimination in violation of Title VII to be filed with the EEOC within 180 days from the

alleged discriminatory action. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). The Court held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393. The Court wrote:

> The provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e-5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It contains no reference to the timely-filing requirement. The provision specifying the time for filing charges with the EEOC appears in an entirely separate provision and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.

*Id.* at 393-94. Although the language in Title VII is *mandatory* ("A charge under this section *shall* be filed within one hundred and eighty days after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1)), the Court declined to hold that it was jurisdictional because the language was not contained within a jurisdiction-conferring statute.[4]

[5] The provision before the Supreme Court in *Zipes* was similar to the provision in § 633a(d) which states that "[s]uch notice shall be filed within one hundred and eighty days."

---

[4]The Court also based its reasoning on the legislative history of the ADEA, which was modeled after Title VII. *Id.* at 395 n.11. The House Conference Report on the 1978 revision of the ADEA stated that the requirement for filing a charge within 180 days of the alleged discriminatory conduct was not jurisdictional and was subject to equitable modification. *Id.* (quoting H.R. Rep. No. 95-950, at 12 (1978) (Conf. Rep.), *as reprinted in* 1978 U.S.C.C.A.N. 528, 534); *see also Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("A timely filing of an EEOC charge is not a jurisdictional prerequisite to suit.").

Accordingly, *Zipes* weighs against holding the 180-day period in § 633a(d) to be jurisdictional. Moreover, if the mandatory language in § 633a(d) concerning the 180-day filing requirement is not jurisdictional, it follows that the mandatory language concerning the 30-day waiting period also need not be construed as jurisdictional.[5]

## V.

Before we can follow the approach the Supreme Court took in *Stevens* and *Zipes*, we must consider our opinion in *Dempsey v. Pacific Bell Co.*, 789 F.2d 1451 (9th Cir. 1986). In *Dempsey*, we strictly construed the 60-day period that a private employee is required to wait before filing a civil action in the district court. *Id.* at 1451. Dempsey, a private employee, filed a complaint with the EEOC and the equivalent California agency alleging age discrimination. *Id.* at 1452. Without waiting 60 days, Dempsey filed a civil action in district court. We held that the 60-day waiting period was jurisdictional, citing its purposes of providing the EEOC time to investigate claims and bring its own suit, and to provide employers with notice and a chance to settle the dispute without litigation.

---

[5]Section 633a acts as a waiver of Federal sovereign immunity. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Sovereign immunity is a threshold question that is sometimes described as "jurisdictional." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990). Waiver of sovereign immunity will be strictly construed in terms of its scope, in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187 (1996). The Supreme Court has stated, however, that "[o]nce Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." *Irwin*, 498 U.S. at 95 (holding that time limits within Title VII are subject to equitable tolling in suits against the federal government). Accordingly, equitable tolling is applicable to ADEA suits against the United States to the same extent as it would be in actions against private persons.

**[6]** Our opinion in *Dempsey* is not controlling for several reasons. First, *Dempsey* interpreted the private employee administrative waiting period, which is distinct from the public employee bypass provision at issue here. Second, *Dempsey* is equivocal on whether the district court lacked authority to grant equitable relief. Third, subsequent Supreme Court cases have clarified that the term "jurisdiction" should be reserved for instances where courts lack any authority to grant relief.

## A.

*Dempsey* concerned the 60-day time period that a private employee must wait after filing a formal charge with the EEOC before his right to file a civil action matures. By contrast, the case at bar concerns the 30-day time period for which a federal employee must wait pursuant to the bypass provision before filing his existing civil action under 29 U.S.C. § 633a. Private employees must file a *charge* with the EEOC before filing suit, while federal employees need only file *notice of intent to sue*. *Compare* 29 U.S.C. § 626(d) *with* 29 U.S.C. § 633a(d). The provisions have distinct purposes and effects. A charge begins an investigation by the EEOC, which may culminate with a civil action by the EEOC should the EEOC be unable to informally resolve the complaint. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). By contrast, the notice requirement, while alerting the EEOC to the dispute, does not necessarily result in an EEOC administrative proceeding. Moreover, the federal employee's right to file a judicial complaint is not subject to, or preempted by, any action by the EEOC. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 589 (9th Cir. 1981).

**[7]** A notice of intent to sue has different purposes and effects from the charge at issue in *Dempsey*. The notice does not have the effect of starting an administrative proceeding by the EEOC, though it may trigger an investigation, and so there is no need to "allow[ ] the EEOC time to file its own suit." *Dempsey*, 789 F.2d at 1452. There is no risk of jointly running

administrative and judicial actions, as there would be under § 626, if private employees did not comply with the waiting period. *Cf. Bankston*, 345 F.3d at 771 ("[A]n administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts." (citation omitted)). Indeed, the bypass provision does not require exhaustion of administrative remedies because no administrative proceeding ever begins. Accordingly, we do not read *Dempsey* as holding that all waiting provisions of the ADEA are jurisdictional.

## B.

**[8]** Furthermore, it is not clear that *Dempsey* actually held that the district court lacked the authority to grant equitable relief. The panel ordered Dempsey's claim dismissed but then stated "since equitable tolling factors may exist in this case, we direct the district court, in the event Dempsey should refile his complaint within the time period hereafter specified, to evaluate those factors in making a determination of whether the statutes of limitation of 29 U.S.C. §§ 626(d) and (e) should be tolled." 789 F.2d at 1451-52. The opinion further notes that "a strict jurisdictional bar could adversely affect plaintiffs, particularly those proceeding *pro se,* by barring those who discover their jurisdictional error after the 180-day or 300-day statutes of limitation," and that "if a plaintiff's jurisdiction error was the result of excusable ignorance and defendant was not prejudiced by the error, the statutes of limitation could be tolled." *Id.* at 1453 (citation omitted). Thus, it appears that the panel in *Dempsey* did not think that its decision would necessarily deprive Dempsey of judicial review of his claim.[6]

---

[6]Our opinion in *Dempsey* may be read as holding that although the statute of limitations for filing a charge with the EEOC and the appropriate state agency could be equitably tolled, the 60-day waiting period could not be tolled. *Id.* at 1453. Thus, if Dempsey continued to want judicial review of his discrimination claim, he had to file a new complaint, now well beyond the 60-day waiting period, and seek equitable relief for filing the complaint so late. It is not clear why such an approach would be superior to allowing a court to consider granting equitable relief in the pending case.

## C.

Our determination that the district court did not lack jurisdiction to grant Plaintiffs relief is bolstered by several recent Supreme Court cases addressing the definition of "jurisdiction." In a case with similar subject matter to the case at bar, the Supreme Court held that Title VII's employee-numerosity requirement is not jurisdictional. *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1238 (2006). Arbaugh sued her employer for discrimination under Title VII. Two weeks after a jury returned a verdict for Arbaugh, the district court granted the employer's motion to dismiss on the grounds that it had fewer than fifteen employees because Title VII defined "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b) (2000). The district court interpreted this requirement as jurisdictional. 126 S. Ct. at 1238 (2000).

The Supreme Court reversed. It considered the statutory and constitutional bases for jurisdiction over a Title VII action, noting that 28 U.S.C. § 1331 "broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.' " *Id.* at 1239 (quoting 28 U.S.C. § 1331). The Court emphasized that the term "jurisdiction" has been used loosely by the Supreme Court and other courts by deeming time limits as "mandatory and jurisdictional," but the Court stated that "in recent decisions, we have clarified that time prescriptions, however emphatic, are not properly typed 'jurisdictional.' " *Id.* at 1242 (quotations and citations omitted). The Court admitted that it had "been less than meticulous" with the distinction between subject matter jurisdiction and elements of a claim for relief. *Id.* The Court emphasized that categorizing an issue as "jurisdictional" carries with it a number of consequences, including that the issue can never be forfeited or waived. *Id.* at 1244. The Court determined that the employee-numerosity requirement was unrelated to the

jurisdictional provision in Title VII.[7] *Id.* (citing *Zipes,* 455 U.S. at 394). The Court concluded that because categorizing a requirement as jurisdictional is up to Congress, the Title VII employee-numerosity requirement was not jurisdictional and could not be raised after trial.[8] *Id.*

[9] The recent opinions are consistent with the Supreme Court's approach in *Zipes* and demonstrate that the Court has moved away from defining "jurisdiction" in terms of a plaintiff's obligation to file a civil action and toward a definition describing the limits of a court's power to adjudicate an action.[9]

---

[7]The Supreme Court stated:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh*, 126 S. Ct. at 1244 (internal citation omitted).

[8]The Supreme Court's approach in *Arbaugh* is consistent with its recent opinions in other cases. In *United States v. Cotton*, 535 U.S. 625 (2002), the Supreme Court overturned a holding that the district court did not have jurisdiction to sentence defendants for a crime not charged on the indictment because "defects in an indictment do not deprive a court of its power to adjudicate a case." *Id.* at 630. In *Kontrick v. Ryan*, 540 U.S. 443, 445 (2004), the Supreme Court held that failure to file an amended complaint within the time constraints was not a jurisdictional defect because "the filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate." *Id.* at 453-54. In *Eberhart v. United States*, 126 S. Ct. 403, 405 (2005), the Supreme Court held that time prescriptions in the Federal Rules of Criminal Procedure cannot "deprive federal courts of subject-matter jurisdiction," and criticized its own use of the term "jurisdictional" for defects that were unrelated to subject matter jurisdiction.

[9]In *Zipes*, 455 U.S. at 398, the Supreme Court concluded:

> By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer.

*Dempsey*, however, by focusing on § 626(d)'s language "that a plaintiff 'must' give sixty days notice before filing suit" and emphasizing that "strict enforcement" was necessary to forward the section's goals, analogized "jurisdiction" to "strict enforcement" of the plaintiff's duties. 789 F.2d at 1452. The rejection of such an approach by the Supreme Court in *Arbaugh*, *Zipes*, and other cases clarifies that *Dempsey* did not concern a "jurisdictional" issue that cannot be waived or equitably tolled.

## D.

**[10]** We conclude that the 30-day waiting period in 29 U.S.C. § 633a(d) is not jurisdictional in the sense that a district court lacks any authority to grant relief when a complaint is filed prematurely. Section 633a(c) provides for jurisdiction of federal district courts over discrimination claims pursuant to the ADEA.[10] *Bunch v. United States*, 548 F.2d 336 (9th Cir. 1977). District courts are broadly authorized to exercise subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Only Congress may classify a statute as jurisdictional. *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). However, Congress did not place the 30-day waiting period within the specific provision that confers jurisdiction on the federal district courts. Moreover, because "time prescriptions, however emphatic, are not properly typed 'jurisdictional,' " the mandatory language in §633a(d) does not support an interpretation of its time prescriptions as "jurisdictional." *Arbaugh*, 126 S. Ct. at 1242 (citation omitted). Accordingly, we hold that

---

[10]That section reads:

> (c)    Civil actions; jurisdiction; relief

> Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

29 U.S.C. § 633a(c).

the time prescriptions in 29 U.S.C. § 633a, including the 30-day waiting period, are not jurisdictional and may be forfeited, waived, or equitably modified.

Our conclusion is supported by two other considerations. First, "[t]he ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981). This purpose would be frustrated if the premature filing of a complaint, which did not prejudice the defendant, was held to prohibit a court from considering the claims on the merits.

Second, two other circuits have held that, given the non-jurisdictional nature of the 180-day period within which a federal employee must file notice of intent to sue, failure to file a notice with the EEOC *at all* may be subject to equitable relief. *Castro v. United States*, 775 F.2d 399, 403 (1st Cir. 1985) *abrogated by Stevens v. Dept. of Treasury*, 500 U.S. 1 (1991); *Ray v. Nimmo*, 704 F.2d 1480, 1483-84 (11th Cir. 1983). If complete failure to file a notice of intent to sue may be equitably remedied, it follows a fortiori that prematurely commencing a civil action within 30 days of actually giving notice of intent to sue should be subject to equitable relief.

**[11]** We conclude for the foregoing reasons that even though Plaintiffs filed their complaint in the district court without waiting 30 days from the date they provided the EEOC with notices of intent to sue, as required by 29 U.S.C. § 633a(d), the district court had jurisdiction to grant them equitable relief from their premature filing.

## VI.

Having determined that the district court had jurisdiction to grant Plaintiffs equitable relief, we must consider whether Plaintiffs should be granted such relief. In *Naton,* we explained that equitable tolling "often focuses on the plain-

tiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant." *Naton*, 649 F.2d at 696. We have subsequently noted that "[w]here the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate." *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002).

The issue of equitable tolling often arises in the context of a plaintiff failing to file an action within a statute of limitations, and we "review de novo the district court's dismissal of a complaint on statute of limitations grounds." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir. 2000). Our standard of review for the application of equitable tolling is more nuanced, as we explained in *Johnson*, 314 F.3d at 413-14.[11]

Initially, we note that our opinion in *Hageman v. Phillips Roxane Laboratories, Inc.*, 623 F.2d 1381 (9th Cir. 1980), is not controlling. Hageman, a private employee, failed to file

---

[11]We noted:

> The law of this Circuit is somewhat inconsistent regarding the standard of review applicable to a district court's determination of whether equitable estoppel or equitable tolling applies to a claim barred by the statute of limitations. *See, e.g., Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1175 (9th Cir.2000) (while de novo standard applies to district court's determination of whether a claim is barred by the statute of limitations, the decision as to whether *equitable tolling* applies "is generally reviewed for an abuse of discretion, unless the facts are undisputed, in which event the legal question is reviewed de novo") (emphasis added) (citations omitted); *id.* at 1176 ("This court reviews the district court's decision whether to apply the *equitable estoppel* doctrine for an abuse of discretion.") (emphasis added) (citation omitted); *Leorna* [*v. United States Dep't of State*], 105 F.3d [548] at 550 [9th Cir. (1997)] (applying de novo standard of review to equitable tolling claim); *Scholar* [*v. Pac. Bell*], 963 F.2d [264] at 266 [9th Cir. (1992)] (same).

314 F.3d at 413-14.

any notice of intent to sue with the Department of Labor and then filed a civil action over a year after the expiration of the time within which he was supposed to file a notice of intent. *Id*. at 1382-83. The district court dismissed the case because Hageman had not filed a notice of intent to sue. *Id*. at 1381. The issue on appeal was whether "the notice of intent to sue requirement should be either deemed satisfied or waived." *Id*. We affirmed the dismissal noting that: (a) "there [was] no evidence that Hageman found the notice of intent to sue requirement ambiguous or that he believed that the complaint he filed complied with it"; (b) "any ambiguity Hageman may have perceived must have been cleared up at least as early as March 29, 1976 and possibly earlier, when he was informed that his complaint did not satisfy the notice requirement of the statute"; and (c) Hageman did not file his action until August 31, 1977, "over a year after [his employer] justifiably believed the case was closed." *Id*. at 1385-86.

Of course, *Hageman*'s relevance to this case is limited by the fact that it was decided before the Supreme Court's decision in *Zipes* clarified that filing a notice of intent to sue was not jurisdictional and by the fact that Hageman was a private, not a federal, employee. More importantly, Plaintiffs have not swung at any of the three strikes that threw Hageman out of court. First, Plaintiffs filed their complaint prematurely because they mistakenly thought that they were required to do so to preserve judicial review of their claims. Second, their misconception was not cleared up until well after they had filed the complaint. Indeed, even the district court's May 2005 order granting summary judgment does not clearly indicate that Plaintiffs were mistaken in their belief that they had to file their lawsuit within 180 days of the underlying alleged incidents of discrimination. Third, there was no prejudice to the defendant from the early filing. Accordingly, contrary to the district court, we conclude that *Hageman* does not bar a grant of equitable tolling in this case.

[12] We next turn to the merits of Plaintiffs' request for equitable tolling. Equitable tolling is appropriate where there

is "excusable ignorance of the limitations period and [a] lack of prejudice to the defendant," *Naton*, 649 F.2d at 696, or where "the danger of prejudice to the defendant is absent, and the interests of justice [require relief]." *Azer*, 306 F.3d at 936.

**[13]** Here, there is no showing or even any suggestion that the premature filing of Plaintiffs' complaint was prejudicial to the defendant. The defendant knew of Plaintiffs' unsuccessful attempts at counseling with the EEOC in early 2001. On July 5, 2001, the EEOC informed the appropriate staff director of the employing agency of Plaintiffs' complaint. There is no suggestion that the defendant at any time alleged any prejudice from the premature filing of Plaintiffs' complaint. Moreover, the district court's order granting summary judgment makes no finding of prejudice.

There is no doubt that Plaintiffs filed their complaint prematurely and that they did so because they mistakenly thought that they had to do so to preserve judicial review of their claims. There is no suggestion that they had any ulterior motive for doing so. Thus, whether they are granted equitable tolling turns on an evaluation of whether their mistake was "excusable" or whether relief is warranted by the "interests of justice."

We conclude that even if Plaintiffs' mistake was not excusable, the "interests of justice" support our grant of equitable tolling. It is not clear when Plaintiffs retained counsel, but they had counsel at the time they filed their complaint and this weighs against a finding of excusable neglect.[12] However,

---

[12]*See Johnson*, 314 F.3d at 417, holding that because the plaintiff was represented by counsel, she could "be charged with constructive knowledge of the law's requirements, through her attorney, during the relevant time period." *See also Leorna v. United States Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997), holding that "once a claimant retains counsel, tolling ceases because she has 'gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements.' " (internal citations omitted).

unlike instances where a plaintiff fails to act within a statute of limitations and therefore cannot proceed unless his or her delay is excused, here Plaintiffs were entitled to proceed if they filed their complaint sometime after June 23, 2001. Thus, if Plaintiffs had filed a new complaint or if either of the amendments to their complaint had been treated as a new complaint, Plaintiffs would have been entitled to a judicial determination of the merits of their complaint.[13] It would be contrary to the remedial and humanitarian purposes of the ADEA, *see Naton*, 649 F.2d at 696, to allow the premature filing of a complaint, that in no way prejudiced the defendant, to deprive the Plaintiffs of their day in court.

Certainly such a draconian measure is not required by the underlying purposes of the waiting period. As noted, when a federal employee opts for the bypass provision, his right to seek judicial review is not dependent on any action by the EEOC. Indeed, in this case, the EEOC did not even inform the defendant of Plaintiffs' notices of intent to sue until July 5, 2001. Thus, had Plaintiffs waited the 30 days and filed their complaint on June 23, 2001, this still would have been before the EEOC informed the defendant of Plaintiffs' notices of intent to sue. Furthermore, the purpose of providing the EEOC with notice of intent to sue is to allow it to "take any appropriate action to assure the elimination of any unlawful practice." 29 U.S.C. § 633a(d). This purpose is not vitiated by the filing of the lawsuit. The EEOC can still negotiate with the parties and seek an agreed upon resolution, which might well include the dismissal of the lawsuit. In this instance, the filing of the lawsuit did not interfere with the EEOC's efforts because nothing happened between the filing of the lawsuit on June 1, 2001, and August 27, 2001, when defendant filed a

---

[13]The district court did not comment on Plaintiffs amending their complaint, possibly because it thought that it lacked any jurisdiction over the case. Because the parties have failed to address the impact of the amendments on the district court's jurisdiction in their briefs before this court, we decline to do so.

motion to dismiss alleging that the named defendants were not the proper parties.

**[14]** In sum, we grant Plaintiffs equitable relief from filing their complaint prematurely because we determine that defendant was not prejudiced by the premature filing and relief is supported by the interests of justice. We grant equitable relief, rather than remand this matter to the district court because of the passage of time since the filing of the complaint and the lack of prejudice to the defendant.[14]

Accordingly, for the foregoing reasons, we **VACATE** the district court's order of summary judgment and **REMAND** for further proceedings consistent with this opinion.

BEA, Circuit Judge, dissenting:

In this case Plaintiffs' attorneys jumped the gun in filing an age discrimination suit in federal court. Rather than give the EEOC the 30-days notice of intention to file suit provided by statute, during which 30 days the EEOC could attempt conciliation/settlement, the attorneys filed the action 9 days after giving such notice. Plaintiffs—and now the majority—say "Don't take things too literally; no harm, no foul."

I say: "No dice."

Facts are stubborn things.[1] The fact is that the statute in

---

[14]In *Naton*, we recognized our inherent authority to grant equitable relief, and we indicated that such relief should be determined on a case-by-case basis. 649 F.2d at 696. Although such a determination is usually made in the district court, this case presents an unusual situation where judicial efficiency recommends that we grant relief rather than remand the issue to the district court.

[1]"Facts are stubborn things; and whatever may be our wishes, our inclinations or the dictates of our passion, they cannot alter the state of facts and evidence." John Adams, *Argument in Defense of the Soldiers in the Boston Massacre Trials*, December 1770, *available at* http://www.quotationspage.com/quote/3235.html.

question, 29 U.S.C. § 633a(d) reads: "no civil action may be commenced by an individual . . . until the individual has given the Commission not less than thirty days' notice of an intent to file such action." Regardless whether one labels § 633a(d) a "jurisdictional" provision, the 30-day notice time is a clear statutory requirement which determines a complainant's ability to seek relief in federal court.[2] The appellants here did not allow 30 days to pass between giving notice of intention to sue and filing their action; therefore, they did not comply with "the notice requirements of § 633a(d)" and consequently "cannot proceed to federal court by that route." *Rann v. Chao*, 346 F.3d 192, 199 (D.C. Cir. 2003). Hence, I must respectfully dissent.

Furthermore, assuming we may consider principles of equitable tolling pursuant to *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), I disagree with the majority's conclusion that because the defendants in this case were not prejudiced by appellants' early filing in contravention of § 633a(d), we should apply principles of equitable estoppel to allow appellants' case to proceed. "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply *once a factor that might justify such tolling is identified*, it is not an independent basis for invoking the doctrine and sanctioning deviations from

---

[2]It is a clever rhetorical devise to deflect attention from the text of a statute to raise the question whether to label the statute "jurisdictional" or "not jurisdictional"—and then to shift the discussion from the statute's text to whether the label truly applies. Such is but one example of shifting the focus from the unpleasant facts to a grand-sounding abstraction. For instance, it is much more pleasant to discuss the attributes of a fine wine than crash to earth by looking at the price list. So here, if one can focus the argument on whether the statute is like or unlike other statutes which have been characterized as "non-jurisdictional," one might even be able to avoid the actual words in the statute. As will appear below, when the words of a statute are clear, the Supreme Court will not allow musings as to whether it is "jurisdictional" or not. It will not play that game. *See infra* pages 10832-36 (discussing *Hallstrom v. Tillamook County*, 492 U.S. 20, 31 (1989)). Neither should we.

established procedures." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) (emphasis added). Here, no factor justifying tolling exists. The majority's application of equitable principles in the absence of such a factor effectively sounds the death knell to § 633a(d)'s 30-day waiting requirement.

Accordingly, I dissent.

## I.

The only dispute before us is whether the Plaintiffs may proceed in a federal action after failing to wait 30 days following the filing of a notice of intent to sue with the EEOC before initiating their suit in federal district court. I would affirm the district court's summary judgment order on the simple grounds that § 633a(d), according to its plain terms, "is a mandatory, not optional, condition precedent for suit" in federal court. *Hallstrom*, 493 U.S. at 26. The majority's somewhat labored jurisdictional analysis is simply unnecessary to resolution of this case. To explain my reasoning in coming to this conclusion, I begin by exploring three Supreme Court cases that shed light on how best analytically to approach the issue before us.

## A.

First, *Hallstrom v. Tillamook County*, while dealing with a substantive area of law separate from the ADEA, illustrates how best to apply a statutory provision requiring plaintiffs to wait a certain period of time before commencing suit in federal court. In *Hallstrom* the Court considered a provision of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(b)(1), requiring plaintiffs to notify "the alleged violator, the State, and the Environmental Protection Agency . . . of their intent to sue" at least 60 days prior to commencing suit. *Id.* at 22. The controversy in that case began when plaintiffs notified the owners of a neighbor-

ing landfill they intended to file suit against said owners for alleged violations of standards established under RCRA. *Id.* at 23. Without notifying the State or the EPA, plaintiffs commenced the action a year after sending their notice. The defendant moved for summary judgment, claiming the district court lacked jurisdiction because the plaintiffs had failed to notify the State and the EPA of the suit. *Id.* at 23-24. The district court denied the motion, ruling that the plaintiffs had cured any defect by notifying the State and the EPA the day after filing suit. On the merits, the district court ruled in favor of this plaintiffs. *Id.* at 24. We reversed, holding that "the 60-day notice requirement deprived the District Court of subject matter jurisdiction." *Id.*

The Supreme Court affirmed our decision. The Court explained the issue was "whether compliance with the 60-day notice provision is a mandatory precondition to suit or can be disregarded by the district court at its discretion." *Id.* at 23. The Supreme Court's analysis was grounded in the plain text of the statutory command:

> The language of this provision could not be clearer. A citizen may not commence an action under RCRA until 60 days after the citizen has notified the EPA, the State in which the alleged violation occurred, and the alleged violator. Actions commenced prior to 60 days after notice are "prohibited." . . . Under a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit.

*Id.* at 26. The Court then rejected a number of arguments why the statute "should be given a flexible or pragmatic construction." *Id.*

Notably for present purposes, the Court declined to hold that "RCRA's 60-day notice provision should be subject to equitable modification and cure" pursuant to *Zipes v. Trans*

*World Airlines, Inc.* 455 U.S. 385, 393 (1982). *Id.* at 27. The Court explained:

> In *Zipes*, we held that the timely filing of a charge of discrimination with the [EEOC], as required under Title VII . . . was not a jurisdictional prerequisite to suit but was subject to waiver, estoppel, and equitable tolling. This decision does not help petitioners. First, as we noted in *Zipes*, both the language and legislative history of § 2000e-5(e) indicate that the filing period operated as a statute of limitations. The running of such statutes is traditionally subject to equitable tolling. Unlike a statute of limitations, RCRA's 60-day notice provision is not triggered by the violation giving rise to the action. Rather, petitioners have full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for at least 60 days. The equities do not weigh in favor of modifying statutory requirements *when the procedural default is caused by petitioners' failure to take the minimal steps necessary to preserve their claims*.

*Id.* at 27 (emphasis added) (internal quotations marks and citations omitted).

Having determined that the plain text of the statute rendered the 60-day notice requirement a "mandatory condition[ ] precedent to commencing suit under the RCRA," the Court expressly declined to hold that the 60-day requirement was jurisdictional. *Id.* at 31. "The parties have framed the question presented in this case as whether the notice provision is jurisdictional or procedural. In light of our literal interpretation of the statutory requirement, *we need not determine* whether § 6972(b) is jurisdictional in the strict sense of the term." *Id.* (emphasis added). Similarly, we need not determine whether 29 U.S.C. § 633a(d) is "jurisdictional" and for the same reason.

Second, in *McNeil v. United States*, 508 U.S. 106, 107 (1993), the Court applied a similar analysis while considering a provision of the Federal Tort Claims Act ("FTCA") which required that "an action shall not be instituted upon a claim against the United States for money damages unless the claimant has first exhausted his administrative remedies." (internal quotation marks omitted). There, a plaintiff lodged a complaint in federal district court against a federal agency, invoking the court's jurisdiction under the FTCA. Four months later, the plaintiff submitted a claim for damages to the appropriate agency. *Id.* at 107-08. The agency denied the administrative claim, and the plaintiff sought to pursue his claim in district court. *Id.* at 108-09. The district court granted the Government's motion to dismiss the complaint on grounds the complaint was premature, having been filed prior to exhaustion of the administrative action. *Id.* at 109. The court of appeals affirmed. *Id.* at 109-10.

The Supreme Court also affirmed. The Court explained the issue presented was "whether [the] action was timely either because it was commenced when [the plaintiff] lodged his complaint with the District Court . . . or because it should be viewed as having been 'instituted' on the date when his administrative claim was denied." *Id.* at 110-11. The Court had little trouble deciding the case based on the plain text of the statute:

> The text of the statute requires rejection of the first possibility. The command that an "action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" is unambiguous. We are not free to rewrite the statutory text.

*Id.* at 111 (quoting 28 U.S.C. § 2675(a)) (omission in the original). Regarding the second "possibility," again the Court looked to the plain text:

> In it statutory context, we think the normal interpre-
> tation of the word "institute" is synonymous with the
> words "begin" and "commence." The most natural
> reading of the statute indicates that Congress
> intended to require complete exhaustion of Execu-
> tive remedies before invocation of the judicial pro-
> cess. . . . The interest in orderly administration of
> this body of litigation is best served by adherence to
> the straightforward statutory command.

*Id.* at 112.

From these cases we learn that when the plain text of the
statute predicating access to federal courts is clear, the
Supreme Court applies the plain text; it goes no further in its
analysis. The reason: " 'in the long run, experience teaches
that strict adherence to the procedural requirements specified
by the legislature is the best guarantee of evenhanded admin-
istration of the law.' " *Hallstrom*, 493 U.S. at 31 (alteration
omitted) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826
(1980)); *see also McNeil* 508 U.S. at 113 (quoting the same
language). It is for Congress, which has the constitutional
authority, (U.S. Const. Art. III, §§ 1, 2, cl.2), and the benefit
of legislative deliberateness, debate, committee hearings,
expert testimony, etc., to determine plaintiffs' ability to seek
relief in federal court. Hence, when Congress has specified a
precise procedure to gain access to federal court, our job as
Article III judges is to apply the "mandatory condition[ ] pre-
cedent to commencing suit" in federal court, not to engage in
jurisdictional abstractions. *Hallstrom*, 493 U.S. at 31.

Third, *Zipes v. Trans World Airlines, Inc.* does not require
us to determine whether § 633a(d) is jurisdictional. At issue
in *Zipes* was "whether the timely filing of an EEOC charge
is a jurisdictional prerequisite to bringing a Title VII suit in
federal court or whether the requirement is subject to waiver
and estoppel." 455 U.S. at 392. The Court provided a number
of reasons why the timely filing of a charge with the EEOC

was not a precondition to federal suit, but primary among these reasons was that the period within which to file a charge was analogous to a statute of limitations in that it prevented the filing of "stale claims." *Id.* at 394 (internal quotation marks omitted). As explained, in *Hallstrom* the Court distinguished *Zipes* by explaining that "in *Zipes* both the language and legislative history of § 2000e-5(e) indicate that the filing period operated as a statute of limitations." 493 U.S. at 27. Hence, like a statute of limitations, the period within which to file a charge with the EEOC under Title VII is "subject to waiver as well as tolling when equity so requires." *Zipes*, 455 U.S. at 398.

Importantly, the provision at issue in *Zipes* did not deal with a complainant's ability to initiate suit in federal court; it dealt *only* with the timely filing of a charge with the EEOC: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1).[3] Thus, in *Zipes*

---

[3]Were the issue in this case the requirement in 29 U.S.C. § 633a(d) that a plaintiff file notice with the EEOC "within one hundred and eighty days after the alleged unlawful practice occurred," *Zipes* likely would be controlling. This provision of § 633a(d), like the provision at issue in *Zipes*, is akin to a statute of limitations, designed to prevent stale claims. *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) ("The purpose of a statute of limitation is 'to prevent assertion of stale claims against a defendant.' " (quoting *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001))). The requirement that a plaintiff wait 30 days after the filing of the notice with the EEOC before filing suit in federal court, however, bears no relation to a statute of limitations. The 30-day waiting period serves the important function of allowing parties to seek conciliation prior to commencement of a federal lawsuit. *See Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990). Furthermore, the 30-day waiting period is an express command limiting a plaintiff's ability to sue in federal court, which the 180-day requirement clearly is not. Nonetheless, without giving any thought to the very different natures of the 180-day and 30-day requirements in § 633a(d), the majority holds "if the mandatory language in § 633a(d) concerning the 180-day filing requirement is not jurisdictional, it follows that the mandatory language concerning the 30-day waiting period also need not be construed as jurisdictional." Maj. Op. at 10819. Not so. Given the different purposes of the provisions, it comes as no surprise the majority does not explain *why* "it follows."

the Court was not presented a statutorily mandated procedure for initiating suit in federal court, which *was* the precise issue presented the Court in *Hallstrom*, and *McNeil* and is the same issue presented here. These cases, with their clear emphasis on applying the plain statutory requirements before commencing suit in federal court, should guide our analysis, not *Zipes*.

## B.

Having explained the bases of my reasoning, I now apply this analysis to the statute at issue. Per the Court's instructions in *Hallstrom*, I consider the plain language of 29 U.S.C. § 633a(d).

> When the individual has not filed a complaint concerning age discrimination with the Commission, *no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action*. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

29 U.S.C. § 633a(d) (emphasis added). I am satisfied that "[t]he language of this provision could not be clearer." *Hallstrom*, 493 U.S. at 26. "[N]o civil action may be commenced" until an ADEA complainant has waited at least 30 days after filing a notice of intent to sue with the EEOC. 29 U.S.C. § 633a(d). To borrow the Supreme Court's phraseology, "[u]nder a literal reading of the statute, compliance with the [30-day] notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom*, 493 U.S. at 26. No more, no less.

Because Plaintiffs in this case waited only 9 days after filing their notice of intent to sue with the EEOC before filing their complaint in federal district court, § 633a(d) bars their suit. Although Plaintiffs, like the parties in *Hallstrom*, frame the issue as jurisdictional, a "literal interpretation of the statutory requirement" precludes the need to consider whether § 633a(d)'s 30-day requirement is jurisdictional. *Hallstrom*, 493 U.S. at 31.

As in *Hallstrom*, and *McNeil*, this literal, textualist approach best serves legislative interests in providing for a 30-day waiting period as a condition of filing suit in federal court. Examining this and other similar waiting periods, the Second Circuit has explained:

> The purpose of these statutory prerequisites to bringing a civil action—and the well-established policy of the employment discrimination laws—is to provide an opportunity for the resolution of discrimination complaints by means of "conciliation, conference, and persuasion." 29 U.S.C. § 626(d); *see also* 42 U.S.C. § 2000e-5(b). This is an important policy of the anti-discrimination laws, and the Supreme Court has accordingly stressed the legislative preference for voluntary conciliation.

*Wrenn*, 918 F.2d at 1078. Likewise, the Supreme Court has observed:

> Cooperation and voluntary compliance were selected as the preferred means for achieving [the goal of eliminating employment discrimination]. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby . . . the Commission[ ] would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *see also Wrenn*, 918 F.2d at 1078.[4] Indeed, in § 633a(d) Congress has specifically instructed that "[u]pon receiving a notice of intent to sue, the [EEOC] shall promptly notify all persons named therein as prospective defendants in the action and *take any appropriate action to assure the elimination of any unlawful practice*." (emphasis added). Applying the plain text in this case furthers this legislative scheme by prohibiting plaintiffs from circumventing the EEOC's ability to seek conciliation and eliminate unlawful practices *prior* to initiation of a federal suit.

The majority justifies their departure from the plain text by adopting whole-cloth Plaintiffs' assertion that the 30-day waiting period served no purpose in their case because the EEOC did not notify the Department of Homeland Security of the suit until 35 days after the EEOC received the notice of intent to sue. Maj. Op. at 10828-30. But this assertion is irrelevant. The 30-day requirement is a clear restriction on a plaintiff's ability to proceed in federal court, regardless whether its purpose is met in each individual case.

Because the 30-day waiting period of § 633a(d) is clear, there is no need to consider whether principles of equitable estoppel apply in this case. The 30-day waiting period at issue here is in nature analogous to the 60-day waiting period under the RCRA at issue in *Hallstrom*. Both provisions deal with the procedural requirements for beginning a federal action and place the commencement of the action entirely in the plaintiff's hands, subject only to a specified waiting period.

---

[4]I do not disagree with the majority that the EEOC may not file its own suit under § 633a(d). Maj. Op. at 10820-21. But this does not weaken the importance of the 30-day waiting period as a conciliatory waiting period. As the majority admits, this waiting period is designed to allow the EEOC to begin an investigation, and more importantly, to allow the EEOC to seek conciliation amongst the parties and take action likely to end any unlawful practice with an eye towards potentially negating the necessity of a federal suit.

Because I cannot say it any better than the Supreme Court, I borrow from the Court's holding in *Hallstrom*:

> Unlike a statute of limitations, [§ 633a(d)'s 30-day] notice provision is not triggered by the violation giving rise to the action. Rather, [plaintiffs] have full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for at least [30] days. The equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners' "failure to take the minimal steps necessary" to preserve their claims.

493 U.S. at 27 (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975)).

In sum, I would follow the lead of the Supreme Court and apply the plain text of a clear, statutory condition precedent for bringing suit in federal court and affirm the district court's judgment.

## II.

Assuming *arguendo Zipes* allowed the consideration of equitable principles here, appellants have not demonstrated in the least they are entitled to equitable relief. Indeed, if these appellants are entitled to equitable relief, I cannot conceive of any scenario in which a potential ADEA plaintiff prematurely files suit in federal court and is not entitled to equitable relief. In effect, the majority's holding that these Plaintiffs should be allowed to proceed in federal court potentially renders § 633a(d)'s 30-day waiting requirement a nullity.

First the facts. Again, there is no dispute that Plaintiffs improperly filed their suit before the 30-day waiting period began. There is also no dispute that in February 2001, months before the lawsuit was filed, an EEO counselor hand delivered

each plaintiff a written notice (the "Rights Memoranda") informing them of the ADEA's time requirement. The notices minced no words:

> [Y]ou may elect to bypass the administrative procedure and file a civil action directly in an appropriate U.S. District Court, after first filing written notice of intent to file a civil action with the EEOC within 180 calendar days of the date of the alleged discriminatory action. *Once a timely notice of intent to sue if filed with the EEOC, you must wait at least 30 calendar days before filing a civil action.*

(emphasis added). Plaintiffs filed their notices of intent to sue with the EEOC on May 23, 2001. Each notice informed the EEOC that each plaintiff would be represented by the Bays Law Firm. On June 1, 2001, nine days later, Plaintiffs jointly filed their federal lawsuit. The federal complaint was filed by the Bays Law Firm and signed by Cary T. Inabinet, an attorney associated with the Bays Law Firm.

The only justification Plaintiffs have asserted for their premature filing is that had they waited 30 days to file suit in federal district court, they would have violated the 180-day requirement in § 633a(d). This is plainly wrong under *Stevens v. Department of Treasury*, 500 U.S. 1, 7 (1991), as the majority explains. Maj. Op. at 10816-17. Plaintiffs provide no other justification for their mistake, and even the majority concedes the "mistake was not excusable." Maj. Op. at 10828.

Next the law. I am guided by the Supreme Court's holding in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (per curiam). There, the Court considered whether a Title VII complainant could proceed in federal court despite failing to file a complaint in federal district court "within 90 days after the issuance of a right-to-sue letter" as required by 42 U.S.C. § 2000e-5(f)(1). *Id.* at 149. The complainant filed a complaint with the EEOC alleging discriminatory treatment

by a former employer, and the EEOC issued a notice of right to sue. *Id.* at 148. The notice informed the complainant that if she chose to file suit in federal court "such suit must be filed in the appropriate United States District Court within ninety days of [the] receipt of this Notice." *Id.* (internal quotation marks omitted). The complainant did not, however, file a complaint within 90 days of her receipt of the notice, despite further instructions to do so. *Id.* The district court ruled that the filing of the right-to-sue letter did not commence the action within the meaning of Federal Rule of Civil Procedure 8. *Id.* at 148-49. The Eleventh Circuit reversed, "holding that the filing of a right-to-sue letter 'tolls' the time period provided by Title VII." *Id.* at 149.

The Supreme Court reversed the Eleventh Circuit. In so doing, the Court focused on the actions of the complainant in failing to comply with the 90-day filing requirement:

> This is not a case in which a claimant has received inadequate notice, or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, or where the court has led the plaintiff to believe that she had done everything required of her. Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. The simple fact is that [the plaintiff] was told three times what she must do to preserve her claim, and she did not do it. *One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.*

*Id.* at 151 (emphasis added) (citations omitted). Each of these observations is applicable to Plaintiffs in this case. Furthermore, the Court then expressly rejected the contention that equitable tolling should nonetheless apply because the defendant had not demonstrated it was prejudiced by the plaintiff's actions:

> Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply *once a factor that might justify such tolling is identified*, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.
>
> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.

*Id.* at 152 (emphasis added).

Relying on *Baldwin County Welcome Center*, we have on prior occasion recognized that "[d]iligence is required for the successful invocation of virtually any equitable doctrine." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 n.12 (9th Cir. 2001). In *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178-79 (9th Cir. 2000), we considered whether to apply equitable tolling to excuse an ADA plaintiff's untimely-filed charge with the EEOC. We explained: "Equitable tolling may be applied if, *despite all due diligence*, a plaintiff is unable to obtain vital information bearing on the existence of his claim. . . . [Equitable tolling] focuses on whether there was *excusable delay by the plaintiff*. *Id.* at 1178 (emphases added). Focusing on the plaintiff's actions, rather than on the prejudice to the defendant, we refused to apply equitable tolling. *Id.* at 1178-79.

We all agree Plaintiffs' mistake in this case is inexcusable. Like the plaintiff in *Baldwin County Welcome Center*, Plaintiffs here received explicit instructions well in advance of their suit regarding the process to initiate suit in federal court. Moreover, Plaintiffs were represented by counsel at the time they filed their suit. *See Leorna v. U.S. Dep't of State*, 105 F.3d 548, 550-51 (9th Cir. 1997). As in *Baldwin County Welcome Center*, there is simply no factor present in this case that

might justify tolling; hence, there is no need to consider whether the defendant was prejudiced by plaintiffs' early filing.

The majority inverts this analysis, effectively placing the burden on the Government to prove why equitable tolling should not excuse Plaintiffs' mistake despite the fact that Plaintiffs make no showing why their mistake is excusable. The majority states: "Here, there is no showing or even any suggestion that the premature filing of Plaintiffs' complaint was prejudicial to the defendant. . . . There is no suggestion *that the defendant at any time alleged any prejudice* from the premature filing of Plaintiffs' complaint." Maj. Op. at 10828 (emphasis added). Notably absent from the majority's discussion is citation to any authority for placing the burden on the defendant to show prejudice when it is the plaintiff seeking the equitable relief, and the plaintiff has not established he exercised diligence.

The majority resorts to "remedial and humanitarian purposes of the ADEA" and the fact defendants did not receive notice of the suit until after the 30 days to justify the imposition of equitable tolling. Maj. Op. at 10829. That the ADEA is a humanitarian piece of legislation has no bearing on the question presented us. In *Baldwin County Welcome Center*, the Supreme Court dealt with a 90-day filing requirement under Title VII, an analogous piece of humanitarian legislation, and nonetheless held that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse [a] lack of diligence." 466 U.S. at 151. Plaintiffs here failed to exercise any modicum of diligence in filing their complaint only 9 days after notifying the EEOC of their intent to sue. The ADEA's humanitarian and remedial purposes do not provide would-be plaintiffs carte blanche to ignore the clear statutory requirements of bringing a federal suit laid out in § 633a(d). Even if the result in this case might appear "draconian," the law is clear.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court recognized that pursuant to *Zipes* the "time period for filing a charge is subject to equitable doctrines such as tolling or estoppel," yet the Court emphasized that these doctrines "are to be applied sparingly." The reason? " 'Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.' " *Id.* at 113-14 (quoting *Baldwin County Welcome Ctr.*, 466 U.S. at 152). When we apply these doctrines liberally, as the majority does here, we invite disruption of carefully enacted legislative schemes. If these Plaintiffs, with their clear notice and retained counsel, are entitled to equitable relief for their inexcusable mistake, and if the defendant bears the burden to establish prejudice, when will equitable tolling not apply to forgive a plaintiff's failure to adhere to § 633a(d)?

\* \* \*

I would avoid these pitfalls by simply applying the plain text of the statute. Congress has clearly explained what a plaintiff must do to proceed in federal court, and Plaintiffs here failed to follow the statutory mandate. Case closed. By unnecessarily delving into "jurisdiction" and equitable doctrines, I am afraid the majority inadvertently has created many more problems than it has solved "out of a vague sympathy for particular litigants."[5] *Baldwin County Welcome Ctr.*, 466 U.S. at 152. I respectfully dissent.

---

[5]Is the "sympathy" shown by the majority for Plaintiffs' claims indeed for Plaintiffs, or for Plaintiffs' counsel? There is no showing Plaintiffs' counsel could not respond in malpractice damages.